UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MICHAEL RUTHERFORD, an individual; and KEISHA O'NEAL, an individual, <br><br>  Plaintiff, <br><br> V. <br><br> PRUVIT VENTURES, INC. a Texas Corporation; and BRIAN UNDERWOOD, an individual, <br><br>  Defendants. | § § § § § § § § § § § § § § § Civil Action No. <br><br> JURY DEMANDED |

# COMPLAINT AND JURY DEMAND

Plaintiffs Michael Rutherford and Keisha O'Neal, by and through the undersigned counsel bring this complaint for both injunctive relief and damages against Defendants Pruvit Ventures, Inc. and Brian Underwood, and demand a trial by jury.

## THE PARTIES

1. Plaintiff Michael Rutherford ("Rutherford") is an individual who resides in the State of Nevada.

2. Plaintiff Keisha O'Neal ("O'Neal") is an individual who resides in the State of Nevada.

3. Defendant Pruvit Ventures, Inc. ("Pruvit") is a Texas-based corporation with its principal place of business located at, and which may be served with process at, 901 Sam Rayburn Hwy, Melissa, Texas 75454, by serving its registered agent, The Grace Firm, by serving

its principal, Jenifer Grace, 901 Sam Rayburn Hwy, Melissa, Texas 75454 or its president Brian Underwood, 901 Sam Rayburn Hwy, Melissa, Texas 75454.

4. Defendant Brian Underwood ("Underwood") is an individual residing in Kentucky who may be served with process at 901 Sam Rayburn Hwy, Melissa, Texas 75454.

## SUBJECT MATTER JURISDICTION

5. This Court has subject matter jurisdiction over the current dispute pursuant to 28 U.S.C. 1332, as there is complete diversity between the parties and the amount in controversy exclusive of interest and costs, exceeds $75,000. Regarding diversity, Pruvit is domiciled in Texas; Underwood is Domiciled in Kentucky, and Plaintiffs are both domiciled in Nevada.

## THE OTHER PENDING ACTION

6. The Court is put on notice there is a related action titled, *Pruvit Ventures, Inc. v. Rutherford et. al*, Case no. 4:24-307-SDJ, filed in the United States District Court for the Eastern District of Texas, Sherman Division (the "Other Action"). Plaintiffs file this action separately because there is a pending motion to dismiss in the Other Action, and because Plaintiff Rutherford seeks emergency relief, he is forced to file his affirmative claims now rather than waiting for the motion to dismiss in the Other Action to be heard. Plaintiffs do not waive their arguments in the motion to dismiss in the Other Action by filing this lawsuit. If the Court wishes to consolidate the two cases without having any party waive their rights under the pending motion to dismiss in the Other Action, Plaintiffs do not object.

## STATEMENT OF FACTS

**Pruvit**

7. Pruvit is a multi-level marketing company – otherwise known as an "MLM" company – that manufactures and distributes dietary supplements worldwide.

8. Underwood is Pruvit's CEO and sole decision maker.

9. As with other MLM companies, Pruvit markets and sells products through a network of independent distributors (also known as "Pruvers") who are remunerated pursuant to a "Compensation Plan," which provides for a structured series of rankings, commissions, and bonuses based upon their sales volume and the sales of distributors placed beneath them. Each distributor has its own independent business and is responsible for his or her own business expenses and taxes.

10. The individuals that are aligned below a particular distributor are known as that distributor's "downline" or "downline organization." The downline may also be referred to as a "genealogy."

11. In a downline, distributors recruit other distributors to become part of their selling organization. Those distributors then recruit other distributors, thereby creating many levels beneath the initial distributor. As with any business, a distributor builds and creates significant goodwill in his or her downline, thereby making the downline an asset belonging to the distributor.

**Plaintiffs and the Settlement**

12. O'Neal and Rutherford enrolled as distributors for Pruvit in 2017 and 2015, respectively. Plaintiffs worked hard building their downlines, and as a result were able to achieve enormous success and income from their Pruvit business. In fact, Rutherford was deemed a top income earner at the company and was the first distributor to ever achieve the rank of "Legend." As for O'Neal, she, too, was very successful and achieved the high rank of "Eight" in the company. At their height, O'Neal's and Rutherford's income, collectively, was approximately $2.5 million a year.

13. Sometime in or around July of 2023, a dispute arose between Pruvit and the Plaintiffs, which consequently led to the filing of two independent lawsuits – one filed in the United States District Court for the Eastern District of Texas, and the second filed in the District Court for Clark County, Nevada (the "Disputes").

14. Subsequently, the parties were able to resolve their difference and entered a settlement agreement.[1] The parties to the settlement agreement were O'Neal, Rutherford, Pruvit, and Underwood.

15. The settlement agreement set forth the following terms:

   a. That Plaintiffs were no longer allowed to "participate, in any way, with activities related to" Pruvit;

   b. That while Rutherford was no longer allowed to participate in Pruvit, he was still entitled to "receive 100% of all commissions related" to his distributorship position with a maximum cap "of $100,000 per month of earnings . . ."; and

   c. That Pruvit and Underwood "will not take any action to reallocate any [distributor] in [Rutherford's] downline . . ."

16. In addition, the settlement agreement contained the following vague provision regarding the use of social media:

   a. "**Removal of Social Media Posts**. Rutherford and O'Neal shall immediately remove any disparaging remarks regarding Pruvit, Underwood, or any of their Representatives from any and all social media sites or applications

---

[1] The settlement agreement contains a confidentiality clause. However, the clause contains an exception and allows disclosure of its terms when "required to enforce the terms of [the] Agreement . . ." (Exhibit A, ¶3). Because this complaint is seeking to enforce the terms of the settlement agreement, there is no violation by attaching it to this complaint.

Page 4   PLAINTIFF'S ORIGINAL COMPLAINT

controlled by Rutherford, O'Neal, and/or their Representatives ("Rutherford Social Media"). Further, Rutherford and O'Neal shall ***unfriend and remove (as applicable)***: (1) all Rutherford Social Media any current for former Pruvit promoter that Rutherford and/or O'Neal has not personal enrolled in Pruvit; and (2) any person that asks to be unfriended or removed from Rutherford Social Media." (Emphasis added).

17. In case of an alleged violation, the settlement agreement put into place certain safeguards to ensure the defaulting party had an opportunity to cure the violation prior to the commencement of litigation. Specifically, the settlement agreement states:

   a. **"Notice and Opportunity to Cure**. If Pruvit . . . believe[s] that there has been a violation of Section III.2-III.8, then Pruvit . . . must provide written notice (the "Notice"). The Notice shall be sufficiently detailed to enable Rutherford and/or O'Neal to identify and evaluate the alleged violation, including the identification of the specific section of this Agreement allegedly violated. The alleged offending Party will then have 5 business days from receipt of the Notice to cure the alleged violation ("Cure Period")."

**Pruvit's Violations of the Settlement Agreement Against Rutherford**

18. Immediately after executing the settlement agreement, Underwood, on behalf of himself and Pruvit, took actions to undermine the contract's terms and to ensure that Rutherford did not receive the benefit of his bargain. First, Underwood began recruiting distributor's in Rutherford's downline to join a competing MLM named Frequence. It is believed that

Underwood had a financial interest in Frequence – hence, his efforts to take members of Rutherford's downline to the competing company. Also, Underwood recruited members in Rutherford's downline and placed them in different downlines, thereby removing them entirely from Rutherford's business. These actions had an adverse impact on Rutherford's commission.

19. Apart from this, immediately following the execution the settlement agreement, Underwood and Pruvit made changes to the company's Compensation Plan which prohibited Rutherford from receiving 100% of his commissions unless he was able to participate in Pruvit's business (which, as stated above, Rutherford was not permitted to). That is, under the new plan, unless Rutherford was able to engage in Pruvit's business activities, he would not qualify for all levels of compensation, which he was originally receiving for years prior to the execution of the settlement agreement. Pruvit and Underwood made these changes unilaterally, in bad faith knowing that Rutherford would not be able to qualify for all his commissions due to the restrictions contained in the settlement agreement, thereby breaching the contract.

20. Additionally, by changing the Compensation Plan, distributors in Rutherford's downline became dissatisfied with the way their commissions were adversely affected and left the company. Thus, Pruvit and Underwood caused many distributors in Rutherford's downline to leave his organization. As a result, Rutherford's commissions also were drastically reduced, thereby causing economic harm to him.

21. When these changes to the Compensation Plan were made, Rutherford contacted Pruvit, seeking an exception to the settlement agreement to allow him to participate in Pruvit's business so he would continue to receive 100% of his commissions under the new Compensation Plan. Alternatively, Rutherford stated that the new changes to the Compensation Plan should not applied to him so he can continue receiving 100% of his commissions. Rutherford informed

Pruvit that if they did not allow either of these two options, Pruvit's actions would constitute a breach of the settlement agreement, in which case, Rutherford would have no choice but to pursue his legal rights.

22. Rather than adhering to Rutherford's requests and to ensure there was no breach, Pruvit took a different approach. Immediately after Rutherford sent a demand letter that he be paid 100% of his commissions or be allowed to participate in Pruvit's business, Pruvit filed a lawsuit against Rutherford based on pretextual violations of the settlement agreement and then cut off his commissions completely.

**Pruvit's Other Violations Against O'Neal**

23. As stated above, the settlement agreement contained a social media provision that mandated Plaintiffs to "unfriend and remove (as applicable)" all persons from Plaintiffs' social media that were either current or former distributors for Pruvit.

24. In or around October of 2023, Pruvit gave notice to O'Neal alleging that her Facebook contained "friends" that were either current or former distributors of Pruvit, and that she needed to "unfriend" these people. The letter also alleged that O'Neal was in violation of a non-solicitation provision contained in the settlement agreement, which states:

    a. **Non-Solicitation/Recruitment**. During the term of this Agreement and for a period of two (2) years immediately following Rutherford and O'Neal's termination, resignation, or removal from Pruvit, Rutherford, and O'Neal shall not, directly or indirectly (including, but not limited to, through their officers, agents, servants, employees, affiliates, attorneys, and persons in active concert or participation with them, as well as any current and former Pruvit promoters): (1) solicit (advertise, market, promote, accept orders for, recruit,

sell, ship, or distribute) any products or services for any non-Pruvit opportunity, product, or service of any kind in the Direct Sales/Network Marketing industry; (2) initiate contact with, recruit, solicit, sponsor, or induce, or attempt to initiate contact with, recruit, solicit, or induce, any current or former Pruvit customer or Promoter to leave Pruvit, cease being a customer or Promoter of Pruvit, or participate in or become a Promoter or distributor of any other company, including without limitation Promoter's business ventures; (3) instruct or coordinate with any other third party to do so, including but not limited to any other Pruvit Promoters; and (4) solicit or contact any employee of the Pruvit with a view to inducing or encouraging such employee to discontinue or curtail any business relationship with the Pruvit.

25. It was unclear to O'Neal whom she allegedly was soliciting in violation of the clause mentioned above. It was also unclear which persons Pruvit was referring to that remained as "friends" on O'Neal's social media. So, to ensure compliance with the settlement agreement, O'Neal contacted Pruvit and inquired as to the basis of the alleged violations. During those discussions, the parties agreed that if O'Neal produced a full list of all her Facebook "friends" to Pruvit, it would then identify which persons, if any, were current or former distributors for Pruvit and would make a demand that those people be "unfriended" from O'Neal's Facebook. If this was done, then the parties agreed that compliance of the settlement agreement's terms were satisfied. O'Neal agreed to do this, and the list was eventually produced to Pruvit.

26. In November, Pruvit produced a list of who it contended were current or former Pruvit distributors that needed to be "unfriended" from O'Neal's social media. O'Neal

immediately "unfriended" those persons identified except for a few individuals that she personally enrolled in Pruvit, which, according to the terms of settlement agreement, were not required to be "unfriended." After notifying Pruvit that the persons identified by Pruvit were "unfriended," Pruvit acknowledged O'Neal's compliance to the settlement agreement. Such acknowledgment occurred on November 14, 2023.

27. Then, out of nowhere, on January 31, 2024, Pruvit filed a lawsuit against O'Neal in the District Court of Texas, Clark County for allegedly violating the social media provision and the non-solicitation provision. That case was later removed to the United States District Court of Texas in the Eastern District. The lawsuit was filed even though the previously alleged default by O'Neal was cured within the terms of their agreement, and there was no secondary notice of violation of an alleged violation that was left uncured.

28. Because Pruvit failed to provide adequate notice of the alleged violation and failed to provide a reasonable opportunity to cure the alleged violation before filing suit, Pruvit violated the terms of the settlement agreement, namely, the right to cure provision. Accordingly, O'Neal is entitled to damages including all attorney fees and costs incurred in this action.

**Additional Violations Against Rutherford**

29. Similar to O'Neal, following the execution of the settlement agreement, Pruvit sent Rutherford a notice that his Facebook contained "friends" that needed to be "unfriended" to comply with the terms of the settlement agreement.

30. Also similar to O'Neal, Pruvit produced a list to Rutherford of all persons that needed to be removed as "friends." On November 27, 2023, Rutherford confirmed that everyone named on Pruvit's list was removed as a "friend" from Rutherford's Facebook. Therefore, Rutherford complied with the terms of the settlement agreement in a timely manner.

31. However, after sending the list, Pruvit decided to unilaterally change the terms of the settlement agreement. While the settlement agreement provided only that Rutherford "unfriend and remove (as applicable)" all persons associated with his social media, Pruvit then demanded that not only must be "unfriend" people associated with Pruvit, but also that he could not allow any Pruvit distributors to "follow" his social media. In response, Rutherford stated that he could not control who decided to "follow" his social media, but in any case, the settlement agreement provided only that he must "unfriend and remove" persons who were Pruvit distributors. He again confirmed that he did unfriend and remove those persons after receiving the list.

32. After this discussion, Rutherford sent another email for further clarification on how his actions were in violation of the settlement agreement so that he could properly cure any defect. Despite such request, Pruvit did not explain, in any fashion, how someone who "followed" his social media was a violation of the settlement agreement. Instead, Pruvit simply proceeded to file a lawsuit against him and O'Neal, which is described above.

33. Because Pruvit failed to provide adequate notice regarding Rutherford's alleged breach of the settlement agreement before filing a lawsuit, Rutherford has been damaged and is entitled to recover his attorney fees for bringing this suit.

**Rutherford's Irreparable Harm**

34. The commissions Rutherford was earning was his sole income, and he relied on it for all his living expenses, including the living expenses for his children. Rutherford is currently in a custody dispute regarding visitation rights, and unless he receives the necessary funds that he would have received but for Pruvit's breach, he will forever lose the time he gets to spend with his children, which is irreparable harm. Additionally, the settlement agreement contains an

onerous non-compete provision, which prevents him from participating in the MLM industry for a period of two years.[2] This is significant because Rutheford's sole and only business for the past 20 years was MLM. He does not know how else to earn income unless it is related to MLM. While Rutherford disputes whether the non-compete provisions are enforceable, in the event they are enforceable, he will not be able to gain work for period of two years.

## COUNT 1

## BREACH OF WRITTEN CONTRACT

**(By Plaintiffs Against Defendants)**

35. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

36. Plaintiffs entered a written contract with Defendants called the settlement agreement.

37. According the terms of the settlement agreement, the following was supposed to occur:

   a. That Plaintiffs were no longer allowed to "participate, in any way, with activities related to" Pruvit;

   b. That while Rutherford was no longer allowed to participate in Pruvit, he was still entitled to "receive 100% of all commissions related" to his distributorship

---

[2] Non-Competition. During the term of this Agreement and for a period of two (2) years immediately following Rutherford and O'Neal's termination, resignation, or removal from Pruvit, Rutherford and O'Neal agree that, for any reason (the "Post-Termination Period"), they will not, directly or indirectly (whether as employee, independent contractor, consultant, advisor, officer, director, manager, partner, member, shareholder, owner, investor, or otherwise, as well as any current and former Pruvit promoters): (1) render advice or services to, or otherwise assist, any Competitor; (2) hold an equity, voting, or profit participation interest in any Competitor; or (3) carry on or be in any way engaged, concerned, or interest in or have business dealings in the Direct Sales/Network Marketing industry space or any entity that markets, sells or otherwise distributes Competing Products in a market where Company is or is authorized to conduct business ("Restricted Business"). For the purposes of this Agreement, the Parties agree that "Competing Products" include and food, beverage or dietary supplement product.

      position with a maximum cap "of $100,000 per month of earnings . . ."; and

    c. That Pruvit and Underwood "will not take any action to reallocate any [distributor] in [Rutherford's] downline . . ."

    d. That if Pruvit or Underwood believe that there has been a violation of Section III.2-III.8, then Pruvit and/or Underwood must provide written notice (the "Notice"). The Notice shall be sufficiently detailed to enable Rutherford and/or O'Neal to identify and evaluate the alleged violation, including the identification of the specific section of this Agreement allegedly violated. The alleged offending Party will then have 5 business days from receipt of the Notice to cure the alleged violation.

38. Plaintiffs performed all obligations required of them under the terms of the settlement agreement.

39. Defendants breached the settlement agreement by, among other things:

    a. Preventing Rutherford from receiving 100% of his commissions by changing the Pruvit Compensation Plan in a manner that would require Rutherford's participation in Pruvit's business. However, because the terms of the settlement agreement precluded him from being allowed to participate in Pruvit's business, Rutherford did not, and could not receive 100% of his commission.

    b. By causing many distributors to leave Pruvit or relocate themselves in different downlines other than Rutherford's downline, which as a result has significantly caused Rutherford's commissions to decrease, thereby causing him economic harm;

    c. By failing to provide both Rutherford and/or O'Neal a right to cure any alleged

        violation of the settlement agreement in accordance with provision 9 of the contract, before filing a lawsuit against them. The right to cure provision mandates that Pruvit sufficiently detail the alleged violation in a manner that allows Rutherford and/or O'Neal to identify and evaluate the alleged violation; and

        d.    By ceasing to pay Rutherford any of his commissions despite an alleged breach of the settlement agreement.

40.    Defendants were not excused from performing under the terms of the settlement agreement.

41.    As a direct result of Defendants' breach, Plaintiffs are entitled to an amount according to poof at trial, including their reasonable attorney fees and costs.

42.    Additionally, unless Rutherford's commissions are paid to him now, he will be left homeless and will lose visitation rights over his children. This is irreparable harm, which is why emergency relief is necessary.

## COUNT 2

## FRAUD

**(By Rutherford against Defendants)**

43.    Rutherford incorporates all preceding paragraphs as though fully set forth here.

44.    Defendants made certain oral and written representations to Rutherford in or around July 11, 2023, in Dallas, Texas.

45.    Underwood, on behalf of himself and Pruvit represented to Rutherford that Defendants had every intention to comply with the terms of the settlement agreement when the contract was executed by the parties. Specifically, Underwood, on behalf of himself and Pruvit,

represented to Rutherford that he would receive 100% of his commissions, and that Underwood and Pruvit would do nothing to interfere with Rutherford's earnings.

46. This representation was false.

47. In truth, Defendants did not intend to comply with the terms of the contract, and had always planned to undermine Rutherford to ensure that he did not receive the benefit of his bargain. That is, it was always Defendants' plan to change the Compensation Plan in a way that Rutherford would not qualify for 100% of his commissions due to his inability to be involved with Pruvit's business. It was also Defendants' intention to cease paying Rutherford his commissions altogether. Finally, Underwood had always planned to divert distributors from Rutherford's downline to either a competing MLM, Frequence, or to other downlines so that Rutherford's commissions would decline.

48. As explained above, Defendants did, in fact, carry out the bad acts described herein so that Rutherford did not receive his commissions.

49. Had Rutherford knew what Defendants' intentions were, Rutherford would never have agreed to the terms of the contract.

50. Defendants knew at the time they made the representation that they would not comply with the terms of the settlement agreement and that their representations were false.

51. As a result of Defendants' action, Rutherford has been damaged in an amount to be proven at trial. Rutherford's damages include, but are not limited to, any commissions that were withheld by Pruvit because Rutherford did not qualify for all levels of his commissions after the Compensation Plan was changed. Rutherford's damages also include all commissions withheld by Defendants to date, which were supposed to be paid to Rutherford under the terms of the settlement agreement. And finally, Rutherford's damages include any decline in

commissions due to Underwood's tortious acts in diverting distributors from Rutherford's downline to other downlines and/or Frequence.

52. Defendants' actions were premeditated and done willfully and maliciously. Therefore, in addition to compensatory damages, Rutherford is entitled to exemplary damages.

## COUNT 3

### DECLARATORY RELIEF

**(By Plaintiffs against Defendants)**

53. Plaintiff incorporate all preceding paragraphs as though fully set forth here.

54. As stated above, the parties entered into a settlement agreement that contained the following provisions: (1) a social media provision; (2) a non-solicitation provision; and (3) a non-compete provision.

55. The provisions, when taken together, all act as an unreasonable restraint of trade which are unenforceable under Texas law.

56. Defendants dispute that these provisions are unenforceable.

57. Accordingly, a dispute as arose regarding whether these clauses are, in fact, enforceable.

58. Thus, Plaintiffs seeks a declaratory judgment finding that the relevant provisions are unenforceable.

## COUNT 4

### VIOLATION OF BUSINESS AND COMMERCE CODE CHAPTER 54

**(By Rutherford against Pruvit)**

59. Rutherford incorporates all preceding paragraphs as though fully set forth here.

60. Rutherford is considered a "sales representative" and Pruvit is considered a

"principal" as defined under Chapter 54 of the Business and Commerce Code.

61. Pruvit and Rutherford entered a contract, which provided a method of how commissions would be paid to Rutherford for the sale of Pruvit's products.

62. Pruvit failed to pay Rutherford his vested, earned commissions despite the parties' agreement.

63. As a result of Pruvit's breach, Pruvit violated Section 54 of the Business and Commerce Code.

64. Accordingly, Pruvit is subject to treble damages and reimbursement of Rutherford's reasonable attorney fees and costs

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

1. For compensatory damages;
2. For exemplary damages;
3. For treble damages pursuant to Chapter 54 of the Business and Commerce Code
4. For attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 and Chapter 54 of the Business and Commerce Code;
5. For a temporary restraining order and preliminary injunction, enjoining Pruvit from suspending Rutherford's commissions and failing to comply with Section 1(d)(iii) of the settlement agreement;
6. For declaratory judgment finding that the social media provision, the non-solicitation provision and the non-compete provision are unenforceable; and
7. For any other relief the Court deems just and proper.

June 20, 2024                    Respectfully submitted,

 /s/ Phillip J. Conley
Phillip J. Conley
State Bar No. 04666200
E-mail:  pjc@crm-lawfirm.com
Jay M. Rosenberg
State Bar No. 17269450
E-mail:  jmr@crm-lawfirm.com

CONLEY ROSENBERG & MENDEZ P.C.
14160 Dallas Parkway, Suite 800
Dallas, Texas 75254
(972) 364-9700
(972) 713-6480 (facsimile)

Scott Wellman (pro hac vice pending)
Christopher Wellman (pro hac vice pending)
swellman@w-wlaw.com
cwellman@w-wlaw.com
WELLMAN & WARREN, LLP
24411 Ridge Route Drive, Suite 200
Laguna Hills, California 92653
Tel:     (949) 580-3737
Fax:    (949) 580-3738
Pro Hac Vice Application to be filed

Attorneys for Plaintiffs
MICHAEL RUTHERFORD AND
KEISHA O'NEAL

Page 17    PLAINTIFF'S ORIGINAL COMPLAINT