# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| MICHAEL RUTHERFORD and KEISHA O'NEAL § § § *Plaintiffs*, § § v. § § PRUVIT VENTURES, INC. and § BRIAN UNDERWOOD, § § *Defendants*. § | Civil Action No. 4:24-CV-561 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Michael Rutherford's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. #2), which the Court construes as a Motion for Preliminary Injunction. Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

Plaintiff Michael Rutherford petitions this Court to enjoin Defendant Pruvit Ventures, Inc. from withholding sales commissions (Dkt. #2 at p.5). In 2015, Plaintiff enrolled as a distributor for Defendant, a multi-level marketing company that manufactures and distributes dietary supplements (Dkt. #2 at pp.5–6). Defendant pays distributors according to a "Compensation Plan" delineating salaries and bonuses based on performance metrics such as sales volume (Dkt. #2 at p.5). According to the Compensation Plan, distributors earn commissions based on sales generated personally and by recruited distributors operating beneath them (*i.e.*, their "downline organization") (Dkt. #2 at p.5). Plaintiff claims that he "diligently built his downline, and as a result

was able to achieve enormous success and income from his Pruvit business" (Dkt. #2 at p.5; Dkt. #2, Exhibit 9 at p.1).

Around July 2023, a dispute arose between Plaintiff and Defendant resulting in a settlement agreement that set forth the following:

a. Plaintiff was no longer allowed to "participate, in any way, with activities related to" Defendant;

b. While Plaintiff was no longer allowed to participate in Pruvit business, Plaintiff was still entitled to "receive 100% of all commissions related" to his distributorship position with a maximum cap "of $100,000 per month of earnings . . ."; and

c. Defendant would not "take any action to reallocate any [distributor] in [Plaintiff's] downline . . ."

(Dkt. #2 at pp.6–7; Dkt. #2, Exhibit 9 at p.2).

The agreement further contained provisions relating to social media post removal, non-solicitation, recruitment, notice, and the opportunity to cure alleged violations (Dkt. #2 at p.7).

Plaintiff claims that Defendant violated multiple settlement agreement provisions (Dkt. #2 at p.5). For example, following the agreement, Defendant amended its Compensation Plan, prohibiting Plaintiff from "receiving 100% of [his] commissions unless [he] was able to participate in Defendant's business . . ." (Dkt. #2 at p.8; Dkt. #2, Exhibit 9 at p.4). Doing so allegedly violated the settlement agreement because "unless [Plaintiff] was able to engage in [Defendant's] business endeavors"—conduct explicitly prohibited by the agreement—"[Plaintiff] would not qualify for all levels of compensation he originally received for years, prior to the execution of the settlement agreement" (Dkt. #2 at 8; Dkt. #2, Exhibit 9 at p.5). Defendant's amended Compensation Plan

ultimately "disqualified [Plaintiff] from receiving all his commissions due to the restrictions contained in the settlement agreement" (Dkt. #2 at p.8). Defendant's amendments also adversely affected Plaintiff's downline distributors, further reducing Plaintiff's commissions (Dkt. #2 at p.8). Plaintiff requested an exception to the amended Compensation Plan so that he could either participate in Defendant's business or continue receiving 100% of his commissions, but Defendant responded by filing a lawsuit alleging pretextual violations of the settlement agreement (Dkt. #2 at pp.9–10).

On July 12, 2024, the parties presented oral arguments at a motion hearing to the Court (Dkt. #11). The Court took the matter under advisement, "urging parties to resolve some money issues and also consider expediting the case/trial of the matter" (Dkt. #11). On August 30, 2024, the parties submitted a joint status report in which Plaintiff requested an expedited scheduling order setting trial within six months (Dkt. #16 at p.3). The Court granted an expedited trial date within six months and issued a scheduling order to that effect (Dkt. #20 at p.4).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp.*

*v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

**I.        Plaintiff has not shown that denying injunctive relief will cause irreparable harm.**

A preliminary injunction is warranted only where a party shows they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). A harm "is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citing *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981)). The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable injury." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985). However, where the monetary remedy is especially difficult to quantify, the injury can be labeled as irreparable. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596–97 (5th Cir. 2003).

Plaintiff has not shown that irreparable injury in the absence of injunctive relief is present here. Indeed, the harm that Plaintiff alleges he will sustain is monetary. For example, Plaintiff states that he will "be unable to ***pay for the legal services*** to ensure that he maintains visitation rights over his children" and that the family law court "will find that [Plaintiff] ***does not have the financial means*** to take care of them . . . ." (Dkt. #2 at p.16) (emphasis added). Setting aside the speculation inherent in predicting what a family law court will or will not find, the remediable harm Plaintiff allegedly suffers is that he cannot *pay* for legal services (Dkt. #2 at 16). Plaintiff argues that,

4

according to *Garcia*, "withholding [a] child from [a] parent constitutes irreparable harm," yet he does not consider that the harm in *Garcia*—that is, the respondent's "refusal to allow Petitioner contact with the child, his threats to further conceal the child, and . . . [decision to] retain[] the child without Petitioner's consent in the first place"—was significantly more severe and tangible, as it had already occurred (Dkt. #2 at p.16). *Garcia v. Contreras*, No. 3:13-CV-2609, 2013 WL 12100779, at *2 (N.D. Tex. July 12, 2013). The court in *Garcia* also found a "clear risk" that "Respondent [would] further conceal the child in violation of the Hague convention." *Id*. Plaintiff has presented no evidence that comparable circumstances exist in this case. At worst, Plaintiff's time with his children may be "limited," not eliminated, if he falls behind on payments (Dkt. #2 at p.16). Plaintiff's overbroad interpretation of *Garcia* coupled with his speculative prediction as to the family law court's determination cannot transform monetary harm into irreparable, familial harm.

Plaintiff similarly claims that he "will be homeless" if the Court does not grant monetary relief (Dkt. #2 at p.11). Again, Plaintiff opines that he will imminently lose his home if he cannot pay his mortgage, but he offers little evidence to prove that such an outcome would occur. This becomes clearer in the following paragraph stating that "[w]ithout this Court's intervention, [Plaintiff] ***may also risk*** losing his home" (Dkt. #2 at p.11) (emphasis added). Plaintiff's request for commissions to pay his mortgage underscores that his harm can "be undone through monetary remedies." *Deerfield Med. Ctr.*, 661 F.2d 328 at 338. In other words, his harm is repairable.

Plaintiff also cannot receive injunctive relief because his damages are not especially difficult to quantify. *See ICEE Distribs.*, 325 F.3d 586 at 596–97. Both parties can calculate Plaintiff's monetary damages (*i.e.*, his sales commissions) using the formula set out in Defendant's

5

Compensation Plan, which provides a "structured series of rankings, commissions, and bonuses based upon [a distributor's] sales volume and the sales of distributors placed beneath them" (Dkt. #2 at p.5). Whatever the final damages figure would be under the Compensation Plan[1], the "corrective relief will be available at a later date, in the ordinary course of litigation" (*i.e.*, after the expedited trial), further weighing against Plaintiff's request for injunctive relief.

The Court recognizes that Defendant's withholding of commissions will cause Plaintiff financial hardship, but multiple factors mitigate the harm Plaintiff will sustain until the expedited trial. For example, Plaintiff claims that he "has only approximately $8,000 in his bank account," but he has "other household income from his partner who contributes" as a business operator (Dkt. #2 at p.15; Dkt. #8 at p.5). Plaintiff also received "more than $600,000 . . . in the ten months prior to the dispute" (Dkt. #8 at p.5). Given that Plaintiff currently has financial support and previously received a significant sum, the Court finds that Plaintiff has not suffered, nor will continue to suffer, irreparable harm warranting injunctive relief before the expedited trial.

## II. The Court need not consider the remaining preliminary injunction elements given the expedited trial.

Plaintiff has not established a substantial threat that he will suffer irreparable harm. Thus, the Court need not consider the remaining preliminary injunction elements at this stage. The Court will resolve the parties' breach of contract claims at the expedited trial.

---

[1] The Court need not resolve the dispute on the version of the Compensation Plan that should apply to Plaintiff, as that will be addressed at the expedited trial (Dkt. #2 at p.12; Dkt. #8 at p.4).

## CONCLUSION

It is **ORDERED** that Plaintiff Michael Rutherford's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. #2), which the Court construes as a Motion for Preliminary Injunction, is **DENIED**.

**IT IS SO ORDERED.**
SIGNED this 13th day of September, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE