# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MICHAEL RUTHERFORD, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:24-cv-561 |
| | § | Judge Mazzant |
| PRUVIT VENTURES, INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Amend and Objections to Findings of Fact and Conclusions of Law (the "Motion") (Dkt. #84). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises from a contractual dispute. Plaintiff Michael Rutherford ("Plaintiff") was a former independent distributor for Defendant Pruvit Ventures, Inc. ("Pruvit"), a multi-level marketing company that manufactures and sells dietary supplements (Dkt. #76 at p. 1). At all relevant times, Defendant Brian Underwood ("Underwood") served as Pruvit's Chief Executive Officer (Dkt. #76 at p. 1). Pruvit pays its distributors according to a compensation plan based on performance metrics, such as the sales generated personally and by recruited distributors operating beneath them (*i.e.*, their "downline organization") (Dkt. #76 at p. 2).

On July 11, 2023, Plaintiff, Pruvit, and Underwood entered into a Confidential Settlement Agreement and Release (the "Settlement Agreement") to resolve an unrelated dispute between

the parties (Dkt. #63-1; Dkt. #62-1). In relevant part, the Settlement Agreement set forth the following:

> [Plaintiff] shall no longer participate, in any way, with activities related to USR366644 and/or USR677, including, but not limited to, soliciting, or communicating with any Pruvit Promoters or customers about Pruvit, its products or its business and posting any references to Pruvit, its products, its customers or its business on any social media platform

(Dkt. #62-1 at p. 3).

Although Plaintiff was no longer allowed to participate in Pruvit business, Plaintiff was still entitled to "receive 100% of all commissions related to USR677," his downline organization, with a maximum cap "of $100,000 per month of earnings," and Defendant would not "take any action to reallocate any Promoter in the downline of USR677" (Dkt. #62-1 at p. 3).

However, over a year after the Settlement Agreement was executed, litigation ensued once again. Specifically, Pruvit filed suit against Plaintiff styled *Pruvit Ventures, Inc. v. Michael Rutherford and Keisha O'Neil*, Cause No. 471-00630-2024, in Collin County, Texas, through which Pruvit asserted a breach of contract claim against Plaintiff for violations of the non-solicitation provisions of the Settlement Agreement. Pruvit alleged that since the execution of the Settlement Agreement, Plaintiff solicited "Pruvers" for a separate business venture, both through offline communications and through his social media platforms, and Plaintiff failed to take specific action regarding his social media engagement. On April 10, 2024, Plaintiff removed that state court action to the Sherman Division, of the Eastern District of Texas, which initiated a separate proceeding under Civil Action No. 4:24-cv-307-ALM-AGD.

Then, on June 20, 2024, Plaintiff filed the instant lawsuit similarly asserting a breach of contract claim against Pruvit and Underwood (collectively, "Defendants"), in addition to other

causes of action for fraud and violations of the Texas Business and Commerce Code (Dkt. #1 at pp. 11–16). Plaintiff alleged, *inter alia*, that immediately following the execution of the Settlement Agreement, Defendants made changes to Pruvit's compensation plan which ensured that Plaintiff could not receive 100% of all commissions to which he was entitled (Dkt. #1 at p. 6). In Plaintiff's view, Defendants made it impossible for him to receive the relevant commissions because the new compensation plan required specific engagement with Pruvit's business activities, which Plaintiff was forbidden to do under the Settlement Agreement (Dkt. #1 at p. 6).

On January 23, 2025, the Court entered an Order of Consolidation, finding that consolidation of the instant case, Civil Action No. 4:24-cv-561-ALM-AGD, and the record in Civil Action No. 4:24-cv-307-ALM-AGD was appropriate and necessary (Dkt. #39). Shortly thereafter, the matter proceeded to a bench trial from February 10–12, 2025 (*See* Dkt. #58; Dkt. #59; Dkt. #60). The Court heard from three witnesses—Underwood, Jenifer Grace (Pruvit's corporate representative), and Plaintiff—and considered all evidence (Dkt. #81; Dkt. #82; Dkt. #83; Dkt #62; Dkt. #63).

On September 16, 2025, the Court issued its Findings of Fact and Conclusions of Law (the "September 16, 2025 Order"), holding that Pruvit breached the Settlement Agreement and is liable to Plaintiff for the resulting damages (Dkt. #76). Specifically, the Court found the following: (1) the parties entered into a valid and enforceable contract, the Settlement Agreement; (2) Plaintiff performed his obligations under the Settlement Agreement; (3) Plaintiff did not engage in conduct inconsistent with his obligations under the Settlement Agreement—specifically, because the Settlement Agreement did not require Plaintiff to *block* social media followers, the Court declined to construe its provisions to impose that heightened obligation on Plaintiff; (4) Defendants

breached the Settlement Agreement by altering Plaintiff's compensation in ways inconsistent with the terms of the parties' bargain; (5) Pruvit could not prove by a preponderance of the evidence that Plaintiff materially breached the Settlement Agreement; (5) Pruvit expressly bound itself in the Settlement Agreement to pay Plaintiff commissions as defined therein, subject to the carve-out and cap; (6) because Pruvit's updated compensation plan was not an existing agreement at the time the Settlement Agreement was executed, it could not justify changing the commissions to which Plaintiff is entitled; (6) Pruvit's amendments to its compensation plan did not override its specific contractual obligations to Plaintiff under the Settlement Agreement; and (7) Pruvit's reliance on the notices sent to Plaintiff did not excuse its breach (Dkt. #76 at pp. 23–27). Based on those findings, the Court concluded Plaintiff was the prevailing party, thereby rejecting Pruvit's defenses and claims (Dkt. #76 at pp. 27–28). The Court further held that Underwood, in his individual capacity, was not independently liable for breach, except insofar as he benefitted from the 25% carveout expressly provided for in the Settlement Agreement (Dkt. #76 at p. 28).

Consistent with these findings on liability, the Court calculated that Plaintiff sustained damages amounting to $235,166.00, excluding reasonable attorneys' fees (Dkt. #76 at p. 31). The Court did not enter a separate Final Judgment in this matter. Nonetheless, on October 24, 2025, Defendants filed the instant Motion under Federal Rule of Civil Procedure 52(b) (Dkt. #84). Through this Motion, Defendants object to many of the Findings of Fact and Conclusions of Law in the Court's September 16, 2025 Order and ask the Court to amend it accordingly (Dkt. #84 at p. 11). Plaintiff did not respond. The Motion is ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Civil Procedure 52(b) provides that "[o]n a party's motion filed no later than 28 days *after the entry of judgment*, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." FED. R. CIV. P. 52(b) (emphasis added). Because the Court has not entered any judgment in this matter, relief under Rule 52(b) is premature. The Court will, nonetheless, review Defendant's Rule 52(b) Motion under the standard used for motions for reconsideration.

A motion seeking to reconsider may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-cv-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Because this is a motion seeking to reconsider an order *before* final judgment has been entered, the Court looks to Federal Rule of Civil Procedure 54(b). *See AIG Specialty Ins. Co. v. Agee*, No. 24-30245, 2025 WL 655069 (5th Cir. Feb. 28, 2025) (per curiam) (noting that the district court applied Rule 54(b) when evaluating a motion to correct a mistake in its findings of fact and conclusions of law issued *after* a bench trial *but prior* to final judgment); *see Smothered Covered, L.L.C. v. WH Cap., L.L.C.*, No. CV 22-5132, 2025 WL 2837413, at *4 (E.D. La. Oct. 7, 2025) ("Because a judgment has not been entered in this case, the June 17, 2025 Findings of Fact & Conclusions of Law constitutes an interlocutory order the reconsideration of which is governed by Rule 54(b) of the Federal Rules of Civil Procedure.").

"Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)). "Though this standard is lower than the threshold used for reconsideration of judgments under Rule 59, courts still look to similar considerations as those it considers when evaluating Rule 59(e) motions." *AIG Specialty Ins. Co. v. Agee*, No. CV 22-5410, 2024 WL 887694, at *2 (E.D. La. Mar. 1, 2024) (citation modified), *aff'd*, No. 24-30245, 2025 WL 655069 (5th Cir. Feb. 28, 2025). These considerations include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL3524107, at *2 (E.D. La. June 28, 2016).

**ANALYSIS**

Defendants urge the Court to amend its September 16, 2025 Order for various reasons (Dkt. #84). First, Defendants take issue with many of the Court's Findings of Fact (Dkt. #84 at pp. 2–4). Second, Defendants disagree with most of the liability analysis in the Court's Conclusions of Law (Dkt. #84 at pp. 4–8). Third, Defendants dispute the Court's calculation of damages (Dkt. #84 at pp. 8–11). Plaintiff, who proceeded pro se at the bench trial, did not respond. The Court finds that, through this Motion, Defendants attempt to relitigate old issues the Court has already heard or could have been raised earlier, the former of which were already resolved through the September 16, 2025 Order. Indeed, Defendants make no attempt to argue that an intervening change in the controlling law, new evidence not previously available, or a manifest error

in law justifies altering the Court's conclusion (*See* Dkt. #84). Instead, Defendants assert that the Court made errors in fact.

Although some of Defendant's objections to the Court's September 16, 2025 Order are meritorious, and the Court will address those below, these errors in fact do not change the Court's determination that Defendant Pruvit materially breached the July 2023 Settlement Agreement; specifically, the Court found that beginning on February 15, 2024, Defendant Pruvit withheld commissions from deeper levels of Plaintiff's organization and ceased all payments to Plaintiff beginning in May 2024 (Dkt. #76 at pp. 27–28). Similarly, the admitted errors in fact do not change the Court's rejection of Defendant's claims and defenses; namely, the Court did not find that "(1) Plaintiff breached the settlement agreement, (2) that Defendant Pruvit had discretion to modify the compensation plan, and (3) that compliance notices excused Defendant Pruvit's performance obligations under the settlement agreement" (Dkt. #76 at p. 32). Nonetheless, the Court will address the errors in fact that it deems require modification.

Defendants take issue with various dates used throughout the September 16, 2025 Order. Specifically, Defendants take issue with the Court's Findings of Facts referring to conduct occurring between July 2017 and April 2018, emphasizing that the Settlement Agreement was executed in July 2023 and any payments at issue in this matter occurred from July 2023 to April 2024 (Dkt. #84 at p. 3). Defendants are correct (Dkt. #62-1; Dkt. #63-1; Dkt. #63-14; Dkt. #81 at pp. 246–48; Dkt. #82 at p. 29). Any references to a settlement executed in July 2017 are incorrect and should be modified to refer to the July 2023 Settlement Agreement (Dkt. #62-1; Dkt. #63-1). Further, any references to payments made between July 2017 and April 2018 should be corrected to payment made between July 2023 to August 2024 (Dkt. #63-14; Dkt. #81 at pp. 246–48; Dkt. #82

at p. 29). Finally, Defendants note that the Court incorrectly stated that the first day of the bench trial was September 30, 2024 (Dkt. #84). Defendants are correct. The bench trial was held from February 10–12, 2025 (Dkt. #58; Dkt. #59; Dkt. #60). The parties do not brief the Court on how this corrected trial date may change the damages, so the Court will not increase the damages sua sponte. In sum, the Court finds that these corrections should supplement the September 16, 2025 Order, but, again, these errors of fact do not change the Court's findings on Purvit's contractual liability.

Next, Defendants largely assert that the Court's findings on liability are not supported by the record (Dkt. #84 at pp. 4–10). Again, the Court "need only make brief, definite, pertinent findings and conclusions upon the contested matters." *Rivera v. Kirby Offshore Marine, L.L.C.*, 983 F.3d 811, 819 (5th Cir. 2020) (citation modified); FED. R. CIV. P. 52(a), advisory committee's note to 1946 amendment. This standard does not require the Court to "expressly respond like a debate champion to every evidentiary or factual contention made by the losing side." *Richard v. Reg'l Sch. Unit 57*, 901 F.3d 52, 59 (1st Cir. 2018); *see Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (collecting cases). Moreover, in preparing the September 16, 2025 Order, the Court carefully considered the trial testimony and trial exhibits as required under Rule 52. *See Eni US Operating Co., Inc. v. Transocean Offshore Deepwater Drilling, Inc.*, 919 F.3d 931, 935–36 (5th Cir. 2019). Thus, these broad objections are rejected.

Defendants then argue the Court's conclusions and damages calculations are based on evasive, vague, or contradictory testimony (Dkt. #84 at pp. 2–4). Again, the Court rejects this argument. In the September 16, 2025 Order, the Court noted the following:

> The facts contained herein are either undisputed or the Court has made such findings based on the credibility or believability of each witness. In doing so, the

> Court considered all circumstances under which the witnesses testified, including: the relationship of a witness to the parties; the interest, if any, a witness has in the outcome of the case; a witness's appearance, demeanor, and manner of testifying while on the witness stand; a witness's apparent candor and fairness, or lack thereof; the reasonableness or unreasonableness of a witness's testimony; the opportunity of a witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which a witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the Court comments on the credibility of a witness or the weight given to a witness's testimony.

(Dkt. #76 at p. 3 n.5).

The Court even specifically addressed witness credibility and what testimony it credited regarding settlement performance and compliance and termination (*See* Dkt. #76 at pp. 19–21). Although Defendants disagree with the Court's balancing of pertinent considerations, this does not constitute error. And though Defendants generally disagree with the Court's conclusions, "[m]ere disagreement with a district court's order does not warrant reconsideration of [an] order." *Westport Ins. Corp. v. Stengel*, 571 F. Supp. 2d 737, 738 (E.D. Tex. 2005).

In sum, the Court has identified some errors of fact, and the Court has granted Defendants' request to correct those as stated above. However, these corrections do not affect the Courts' decision—that Plaintiff substantially performed his obligations under the Settlement Agreement, Defendant Pruvit materially breached the Settlement Agreement by halting payment of commissions from deeper levels of Plaintiff's organization and terminating all commissions payments after April 17, 2024, Defendant Pruvit did not establish its asserted defenses, and Plaintiff sustained damages (Dkt. #76 at p. 32). Accordingly, the Court finds that its September 16, 2025 Order should be supplemented by the corrections made herein, but the Court finds that its original Findings of Fact and Conclusions of Law (Dkt. #76) should stand.

## CONCLUSION

It is therefore **ORDERED** that the Motion to Amend and Objections to Findings of Fact and Conclusions of Law (Dkt. #84) is hereby **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

**SIGNED this 19th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE